373 So.2d 366 (1979)
R.M. VOGEL and R.V. Gisselbeck, et al., Appellants,
v.
Samuel E. VANDIVER, Appellee.
R.M. VOGEL and R.V. Gisselbeck, et al., Appellants,
v.
William J. SIMMONDS and Joyce B. Simmonds, Husband and Wife, Appellees.
R.M. VOGEL and R.V. Gisselbeck, et al., Appellants,
v.
Charles J. KOUCKY and Patricia L. Koucky, Husband and Wife, Appellees.
Nos. 78-1421 to 78-1423.
District Court of Appeal of Florida, Second District.
June 20, 1979.
Rehearing Denied July 27, 1979.
Howard S. Rhoads of Allen, Knudsen, Swartz, DeBoest, Rhoads & Edwards, Fort Myers, for appellants.
John F. Stewart, Fort Myers, for appellees.
OTT, Judge.
The appellees/plaintiffs individually entered into real estate contracts with appellants/defendants. The contracts were for the purchase of condominium units in appellants' development.
The trial court quite properly held that appellants had breached the contracts because *367 of their admitted failure to build the units contracted for. The judgment assessed damages for the appellees/plaintiffs based on the difference in value between the prices appellees had contracted to pay for the planned units and the alleged value of the planned units on the contracted date for closing  as extended.
We reverse on the ground that the "loss of bargain" damages awarded by the trial court were inappropriate in the absence of bad faith on the part of the vendor.
The leading case is Horton v. O'Rourke, 321 So.2d 612 (Fla. 2d DCA 1975). In Horton, the court set out the applicable rule:
In Florida and many other jurisdictions, the courts follow the English rule announced in Flureau v. Thornhill, whereby in the absence of bad faith the damages recoverable for breach by the vendor of an executory contract to convey title to real estate are the purchase money paid by the purchaser together with interest and expenses of investigating title.
321 So.2d at 613. See 77 Am.Jur.2d Vendor and Purchaser § 522 (1975); 33 Fla.Jur. Vendor and Purchaser § 173 (1960).
The record clearly indicates that appellants' conduct fell far short of bad faith. Bad faith has been defined as:
The opposite of `good faith', generally implying or involving actual or constructive fraud, or a design to mislead or deceive another ... or sinister motive... .
... [contemplating] a state of mind affirmatively operating with a furtive design or some motive of interest or ill will.
Black's Law Dictionary, 4th Ed. at p. 176.
In this case, appellants continually faced difficulties in moving the project along. At an early stage the project was delayed until the Securities and Exchange Commission could complete its investigation. Appellants received another setback when their lender  to whom they had paid a $30,000 commitment  went bankrupt. Appellants lost their commitment fee as a result of this. Thereafter, they had great difficulty obtaining substitute financing. Finally, appellants were caught in the middle of the creation of the City of Sanibel [where the project was located] and the ensuing regulations propounded by that newly created municipality which impeded appellants' plans. Nothing in the extended negotiations and settlement between the appellants and the City of Sanibel suggests appellants' bad faith. If anything, appellants' ultimate resolution of their complicated dispute with the City of Sanibel demonstrates their good faith desire to see the project through.
While there is no question that appellants have breached their contract with the appellees, there was no showing of fraud or sinister motive as required to justify "loss of bargain" damages. Accordingly, the appellees should have been limited to the normal measure of damages for breach of contract.
The judgment of the lower court is, therefore, affirmed as to liability but is set aside as to damages and remanded for a redetermination of damages consistent with this opinion.
GRIMES, C.J., and DANAHY, J., concur.