426 So.2d 1209 (1983)
William J. BOSSO and Jose H. Sotolongo, Appellants,
v.
Grace A. NEUNER and George G. Neuner, Appellees.
No. 82-324.
District Court of Appeal of Florida, Fourth District.
February 9, 1983.
Rehearing Denied March 2, 1983.
*1210 Cone, Wagner, Nugent, Johnson, Hazouri & Roth, and Jane Kreusler-Walsh and Larry Klein, West Palm Beach, for appellants.
Martha C. Warner of Warner, Fox & Seeley, Stuart, for appellees.
WALDEN, Judge.
Following jury verdict judgment was entered in favor of purchasers and against sellers in the sum of $53,020.26 based upon an alleged breach of a purchase sale contract for two condominium units. We reverse.
A synopsis of the events is:
May 1976: Sellers enter into a partnership (orally) for the purpose of developing a planned three building condominium to be known as Atlantis Condominiums.
February and March 1977: Sellers receive bank approval on their loan for 1.5 million dollars. Soon thereafter construction on building number 1 commences.
Sellers are pre-selling condominium units in building number 2 and 3.
July 1977: Buyers speak to seller's sales representative regarding condominiums. The buyers are informed that building number 1 had just been completed, building number 2 was under construction, and building number 3 would be under construction soon with an anticipated completion date of six (6) months or January, 1978.
August 16, 1977: Buyers execute a purchase and sale agreement for two condominium units in building 3. Buyer has a provision inserted into the agreement that provides that upon sellers' failure to receive certificate of occupancy by June 30, 1978, the purchaser may elect to void the agreement and have all deposit monies refunded. Additionally, the contract provided that the anticipated closing date was January 31, but in no event would the closing on the units be later than March 31, 1978.
September 1977: Seller sends a contract to contractor for construction of building number 3 in the amount of 1.6 million dollars. However, the contractor rejects the contract as being not enough money. In addition, the contractor was notified by its insurance carrier that the company would no longer bond condominium projects. The sellers are notified of this development immediately.
August 1978: Buyers discover the construction on building number 3 had not been started.
October 1978: Sellers send a letter to buyers informing them that the construction costs have risen by $350,000.00, making it impracticable and unprofitable to build at the original selling price. The sellers requested a 12% increase in the purchase price of each unit. This was the first notice from the sellers to the buyers that there was a problem with the construction of building number 3. The sellers informed the buyers in this letter that they intended to commence construction on the building number 3 by December 15, 1978.
January 1979: Buyers meet with the sellers and sellers repeated essentially *1211 what was stated in the October letter regarding the construction progress.
The sellers approach the bank to arrange financing for the construction of building number 3. The bank issues to the sellers a commitment for building number 3. The terms are essentially the same as those secured for building number 1. However, the sellers have to pay for an increased escrow interest reserve from funds other than the loan proceeds.
The contractor indicates to seller that they would require $1,850,000.00 for the contract for the construction of building number 3. The sellers indicate that they cannot live with that figure.
March 1979: The bank, in anticipation of sellers compliance with the conditions of the loan, closes the loan and records the mortgage. The contractor applied for building permit for building number 3.
The sellers' architect takes plans to the bank for review by appraiser.
November 1979: The sellers can not raise the 250,000.00 needed for the escrow money and their contractor cannot obtain the bond required as a condition of bank's loan. The bank never funded the mortgage and satisfied the note. Sellers send the buyers a letter notifying them that they will not be building building number 3 and returns the buyers deposit money.

The contract materially provided:
Completion: Developer can neither imply nor guarantee a firm completion and availability date for any uncompleted condominium parcel or any uncompleted portion of the condominium building ... such advance projections, by their nature, having to be approximate estimates. Developer shall make every reasonable and diligent effort to meet or exceed estimated construction schedules, but Developer shall not be obliged to make, provide or compensate for any accommodations to Purchaser as a result of construction delays. Further, such delays shall not serve to cancel, amend or diminish any purchaser's obligations herein undertaken.
Developer's Default: If Developer fails to perform any of the covenants of this Agreement, all monies paid by Purchaser pursuant to this agreement shall at the option of the Purchaser be returned to the Purchaser upon his written demand. Thereupon, all parties hereto shall be relieved of further liability hereunder. Purchaser's legal and equitable remedies shall be limited to the return of all monies paid by the purchaser pursuant to this agreement as herein specified. [Emphasis supplied.]
The appellate point before us is:
THE TRIAL COURT ERRED IN DENYING THE SELLERS' MOTIONS FOR DIRECTED VERDICT BECAUSE THE PURCHASERS FAILED TO PROVE BAD FAITH, REQUIRED TO RECOVER "LOSS OF BARGAIN" DAMAGES.
In their complaint the buyers sued the sellers for breach of contract seeking "loss of bargain" damages. The buyers alleged the sellers had executed the contracts in bad faith because they had no plans to begin construction on building number 3 when they signed the contracts and knew it would not be completed by the represented date.
The sellers moved for a directed verdict but the circuit court denied the motions. The cause was submitted to the jury with the following instructions.
The issue for your determination on the claim of the plaintiff against the defendants is whether or not the defendants exercised bad faith in entering into and subsequently refusing to perform their contract to build and sell the condominium units to plaintiff.
Restating, was bad faith proven here so as to warrant the recovery of "loss of bargain *1212 damages"? We answer "no" to this question.
The general rule as to damages (here adopted by the trial court as the law of the case) governing a breach of a land sale contract is provided in Horton v. O'Rourke, 321 So.2d 612 (Fla.2d DCA 1975).
In Florida and many other jurisdictions, the courts follow the English rule announced in Flureau v. Thornhill whereby in the absence of bad faith the damages recoverable for breach by the vendor of an executory contract to convey title to real estate are the purchase money paid by the purchaser together with interest and expenses of investigating title. [Footnotes omitted.]
However, where bad faith exists the purchaser may obtain loss of bargain damages which is the difference in value between the price the purchaser had agreed to pay and the value of the property on the contracted date for closing. Vogel v. Vandiver, 373 So.2d 366, (Fla.2d DCA 1979). What is bad faith? The answer is found in Vogel, supra:
Bad faith has been defined as:
The opposite of "good faith", generally implying or involving actual or constructive fraud, or a design to mislead or deceive another ... or sinister motive... .
... [contemplating] a state of mind affirmatively operating with a furtive design or some motive of interest or ill will.
Black's Law Dictionary, 4th Ed. at p. 176.
We have surveyed the record in depth, mindful of the rules applicable when considering the propriety of a directed verdict. We conclude that there was no recognizable bad faith on the part of the sellers  no fraud, no design to deceive, no sinister motive, and no ill will. The evidence shows that building number 3 was not completed solely because of unanticipated and unavoidable problems with rising costs, and inability to obtain a bond or escrow monies. Indeed, every sign points to the desire of the sellers to build the third building. In short, we feel and hold that the trial court should have granted the sellers motion for a directed verdict, and that the award of loss of bargain damages must be reversed.
Reversed.
LETTS, C.J., and DOWNEY, J., concur.