492 So.2d 816 (1986)
John P. SHAKESHOBER, Appellant,
v.
FLORIDA RESORT DEVELOPMENT CORP., a Florida Corporation, Appellee.
No. 85-1808.
District Court of Appeal of Florida, Fourth District.
August 13, 1986.
Rehearing Denied September 9, 1986.
*817 John P. Wilkes of O'Neal, Booth & Wilkes, Fort Lauderdale, for appellant.
John M. Ross, Fort Lauderdale, for appellee.
STONE, Judge.
The plaintiff-purchaser of a time share unit appeals the measure of damages for breach of contract applied in the final judgment. The developer-vendor was unable to deliver the unit for the time period specified in the contract as it had been erroneously resold. The trial court found, as a fact, that the defendant's inability to close was negligent and was not the result of bad faith.
The measure of general damages in this state, in an action by a vendee against a vendor, in the absence of bad faith, is the return of the deposit plus interest together with any special damages, such as expenses, and, where applicable, the payment of any actual profit made by the seller on the resale. Gassner v. Lockett, 101 So.2d 33 (Fla. 1958); Bosso v. Neuner, 426 So.2d 1209 (Fla. 4th DCA), rev. denied, 436 So.2d 100 (Fla. 1983). Accord Vogel v. Vandriver, 373 So.2d 366 (Fla. 3d DCA 1979); Horton v. O'Rourke, 321 So.2d 612 (Fla. 2d DCA 1975).
With respect to special damages, no claim was made to the trial court for any expenses, and there was no proof of any specific profit made by the developer. Appellant's claim at all times has been that the measure of damages was his loss of bargain. Appellee has previously refunded appellant his deposit money plus 8% interest.
We conclude that appellant is entitled to payment of interest at 12%, pursuant to section 687.01, Florida Statutes, but has failed to prove any other special damages. Appellant also claims attorney's fees pursuant to section 721.21, Florida Statutes. However, we find that this statute does not apply to the facts of this case.
We therefore reverse and remand with instructions to the trial court to enter judgment for the additional 4% interest.
Affirmed in part, reversed in part and remanded.
GUNTHER, J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
I fully realize that this state follows the English rule, not the American rule, but write because of the poet's admonition that we not be the last to lay the old aside.
To me, the American rule is consistent with the principle of accountability inherent in our way of doing things. In Large v. Gregory, 417 N.E.2d 1160 (Ct.App.Ind. 1981), the court said:
Courts are divided over the proper standard for assessing damages in cases of total breach by the seller of his agreement to convey real property. In jurisdictions following the "American" rule, the buyer is entitled to recover ordinary contract damages, measured by the difference between the contract price and the market value of the land, together with any part payments of the price. See generally 5 A. Corbin, Corbin on Contracts § 1098 (1964); C. McCormick, Handbook on the Law of Damages § 177 (1935). Jurisdictions accepting the "English" rule generally limit the buyer's recovery to his down payment plus interest and reasonable expenses incurred in investigating the title; only if the seller has acted in bad faith or has assumed the risk of a failure to secure title will he be liable for ordinary contract damages. McCormick, supra, §§ 178-79. See also Corbin, supra, § 1098.
Id. at 1163-64.
In D. Dobbs, Remedies (1983) the author says:
Several reasons are given in support of the narrower restitutionary rule. It had its origin in Flureau v. Thornhill, an English case decided in 1776. The court refused to permit "damages in the loss *818 of so good a bargain," and limited recovery instead to the amount the purchaser had paid, plus his "interest and costs." This view may have prevailed partly because the normal expectation or loss of bargain rule had not at that time come to be accepted as the normal one. Or, as often suggested, perhaps titles were so uncertain that there was, as one of the judges said, always an implied condition in the minds of the parties to the effect that if the vendor proved not to have good title, the contract was at an end. If these are the reasons for the narrow rule, they probably made more sense in England in 1776 than they do today, since in this country the recording acts now make titles relatively clear, and if the parties have any condition in mind about the state of the title, it is usually set out in the contract. Although the House of Lords has approved Flureau v. Thornhill and has even declared that its rule must be "taken to be without exception," in practice the English courts seem to have recognized that the underpinnings of the case are weak and it is limited very closely to its own facts. The view seems to be that when "it is a matter of conveyancing, and not a matter of title, it is the duty of the vendor to do everything that he is enabled to do" to secure conveyance, and of course a vendor who conveys to another person is liable for loss of bargain damages even in England. This experience, so similar to that of the American courts that purport to follow Flureau v. Thornhill, suggests that the rule has little real support even though in form it is preserved intact.
Another reason given in support of the rule in Flureau v. Thornhill is that it would create an anomaly to give loss of the bargain damages. This is because in the analogous case of a title defect appearing after conveyance, most courts have limited recovery to the consideration paid plus certain expenses incurred. If this is to be done, it is thought improper to allow a different measure of recovery in the similar case of a title defect appearing before conveyance. Actually, however, the two situations are not so similar as they have sometimes seemed. For one thing, the purchaser ordinarily examines title carefully (or relies on insurance which in turn may be based on title examination) in the case of an actual conveyance. In such a case he is relying probably less on the deed covenants than on his own examination. But the purchaser does not do this at the contract stage because he cannot, and he relies to a very great extent on the vendor's own assertions of title. Second, the limited recovery under Flureau v. Thornhill in the executory contract situation creates a temptation in many vendors to speculate at the expense of the purchaser, or at least at the expense of less sophisticated purchasers. If the vendor's wife does not sign the contract to convey, the vendor, if the market in the property rises, can ask his wife to assert her dower or similar interest in the property to defeat conveyance. Under Flureau v. Thornhill this will cost him little or nothing, and he can then arrange to sell at a higher price to some third person. If the market goes down, on the other hand, the vendor's wife will not assert her interest and the sale can proceed. A good many variations on this theme can be conceived. The point is that the temptation to engage in these shenanigans occurs only at the executory contract stage and not later, after a conveyance is made. This warrants using the loss of bargain rule where the temptation exists, so as to deprive the vendor of a chance to speculate at the purchaser's expense, even though a different rule might well be used after a conveyance is made. A third dissimilarity between the executory contract and the executed conveyance situation is in terms of time. An executory contract has a built-in time limitation, usually weeks or months at the most. Any increase in the value of the land for which a vendor might be held under the loss of bargain rule would be relatively limited. However, in the case of a conveyance, a title defect might not be demonstrated *819 for years, at a time when the entire character of the neighborhood might have changed and when values have increased many-fold. Thus in the case of a conveyance a narrow rule of damages might be warranted when it is not the case of an executory contract.
(Footnote omitted.) See also, Smith v. Warr, 564 P.2d 771 (Utah 1977).