In re Al BESADE, Jr., d/b/a Besade Groves, a/k/a Alfred R. Besade, Jr., a/k/a Alfred Besade, Jr., Debtor.

Bankruptcy No. 86–1184–BKC–6P1.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Aug. 10, 1987.

Peter Koste, Miami, Fla., for debtor.

Peter N. Hill, Orlando, Fla., for Complete Interiors, Inc.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW REGARDING DEBT-
OR'S OBJECTION TO CLAIM NO. 15
FILED BY COMPLETE INTERIORS,
INC.

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court on July 9, 1987, on the Debtor's Objection to Claim No. 15 filed by Complete Interiors, Inc. Upon the evidence and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Al Besade, Jr., ("debtor") as seller and Complete Interiors, Inc., ("Complete") as buyer, entered into a contract dated February 11, 1986, for sale and purchase of 150 acres of real property for a price of $2,300,000.

2. Even though the parties agreed to this set contract price, they included a provision in the contract for adjustment of the contract price at time of conveyance if the Orange County Planning, Zoning and Engineering Departments determined that the 150-acre tract could not be developed into 210 lots as the parties intended.

3. Complete delivered to debtor an earnest money deposit in the form of a $25,000 letter of credit, pursuant to the contract. Debtor converted the letter of credit to cash and spent the money.

4. Debtor was obligated under the contract to use due diligence to immediately pursue an amendment to the 456 acre Whit-ney Lake Planned Unit Development, of which the subject 150-acre tract formed a part, to allow for the 150-acre tract to be developed as a one-half acre single family lot development of 210 units. Approval of the amendment was a condition of the contract which could be waived only by Complete.

5. Prior to entering the contract with Complete, debtor met with Orange County officials and as a result of the meeting debtor believed that the amendment constituted a nonsubstantial change and could be obtained within sixty to ninety days. Debtor made this representation to Complete at the time the contract was executed.

6. After the contract was entered, Orange County officials determined that an amendment to the land use plan was necessitated, not due to the additional lots requested on the property, but because of debtor's requirements that a golf course be deleted and that an additional access point be provided to the planned unit development. Additionally, it was determined that it would take nine to twelve months to obtain such amendment.

7. At the time the 150 acres were under contract to Complete, debtor executed a second contract with a third party for the sale and purchase of the entire 456-acre tract which included the 150-acre tract under contract for sale to Complete.

8. Subsequent to the execution of the original contract with Complete, debtor realized and acknowledged that his execution of that contract had been imprudent because of certain terms of the contract favorable to Complete and due to the fact that he had negotiated and executed the contract without consulting legal counsel.

9. Debtor contacted Complete and represented that their contract would have to be renegotiated. Complete expressed an unwillingness to do so. Debtor then offered Complete $100,000 to terminate the contract. Complete refused the offer. Debtor then represented to Complete that he would take legal action to attack the contract.

10. On June 13, 1986, debtor filed a voluntary petition under Chapter 11 of Ti-

tle 11, United States Code. Debtor immediately filed an "Emergency Motion for Court Approval to Reject and to Accept Certain Executory Contracts for Sale and Purchase of Real Property," pursuant to 11 U.S.C. § 365. After notice and hearing, the Court authorized rejection of the contract with Complete on August 5, 1986.

11. In the order authorizing debtor to reject the executory contract with Complete, the Court stated in its findings that there had been no showing that debtor acted in bad faith when deciding to seek court authorization to reject such contract. This decision by debtor was based on his business judgment that he could find a better deal elsewhere.

12. Later, debtor offered to sell the same 150-acre tract to Complete but at terms more favorable to debtor.

13. On October 13, 1986, Complete filed its Claim No. 15 for damages based on debtor's rejection of the contract and seeking the difference between the fair market value of the property on the date of the breach and the contract price.

14. On March 31, 1987, debtor filed its objections to the claim, reciting that Complete was seeking future profits on the occurrence of future happenings, that such a claim was speculative based on the facts of the case, that the claim was not permitted under the law, that the claim was repetitive of another claim since withdrawn, and that debtor objected to the amounts claimed.

15. Pursuant to the parties' settlement of a separate and unrelated claim, debtor has repaid the $25,000 earnest money deposit.

16. Debtor acted in bad faith in regard to the contract with Complete when he had title to the 150-acre tract and refused to convey the property according to the terms of the contract. Debtor's bad faith is further demonstrated by the fact that he entered into a second contract for sale of the same 150-acre tract while still obligated under the first contract with Complete, that he tried to renegotiate the contract with Complete after realizing that he could have made a better deal, that he pursued legal means by which he could breach the contract with Complete in order to pursue a better deal, and that he then offered to sell the same 150-acre tract to Complete but on terms more favorable to himself.

17. The fair market value of the 150-acre tract as of the day prior to filing or June 12, 1986, was $2,740,000.

18. The contract price for the purpose of determining damages is $2,300,000.

## CONCLUSIONS OF LAW

■ 1. Debtor's court-approved rejection of its contract with Complete constitutes a breach of contract as of June 12, 1986, the day before debtor filed his petition under Title 11, United States Code. 11 U.S.C. § 365(g). Accordingly, Complete is entitled to a pre-petition claim for damages based on breach of contract. 11 U.S.C. § 502(g).

2. Complete timely filed its Claim No. 15 for damages based on breach of contract.

■ 3. The measure of damages is a question of state law. *In re Waldron,* 36 B.R. 633 (Bkrtcy.S.D.Fla.1984), *reversed on other grounds,* 785 F.2d 936, 14 BCD 488 (11th Cir.1986).

4. Under Florida law, the courts follow the English rule announced in *Flureau v. Thornhill* whereby in the absence of bad faith, the damages recoverable for breach by the vendor of an executory contract to convey title to real estate are the purchase money paid by the purchaser together with interest and expenses of investigating title. 2 W.Bl 1078, 96 Eng.Rep. 635. Where, however, the vendor has not acted in good faith, he is liable for full compensatory damages, including the loss of his bargain, which is the difference between the fair market value on the date of the breach and the contract price. *Wolofsky v. Behrman,* 454 So.2d 614, 615 (Fla. 4th DCA 1984); *cf. Waldron, supra,* 36 B.R. at 642. Damages for breach of contract must place the non-breaching party in the same financial position as he would have occupied had the contract been performed. See *Ashland*

*Oil, Inc. v. Pickard,* 269 So.2d 714 (Fla. 3d DCA 1972).

■ 5. The bad faith standard under Florida law for damages based on breach of contract is far different from the bad faith standard under bankruptcy law for determining whether a case should be dismissed or a motion to reject an executory contract denied. *See, e.g., In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir. 1984); *In re Waldron,* 785 F.2d 936 (11th Cir.1986). Just because debtor did not act in bad faith when seeking court authorization under 11 U.S.C. § 365 to reject an executory contract does not mean that debtor did not act in bad faith under state law for the purposes of determining damages for breach of contract.

6. In Florida, a bad faith breach is found to exist where the seller has title and refuses to convey, or disables himself from doing so by conveyance to another person. *Wolofsky, supra,* at 615, *quoting Key v. Alexander,* 91 Fla. 975, 108 So. 883 (1926).

7. In order for a seller's breach to be deemed to have been in good faith, the seller's failure or inability to close must be the result of factors beyond his control. *Wolofsky, supra,* at 616, *citing Bosso v. Neuner,* 426 So.2d 1209, (Fla. 4th DCA 1983), *Vogel v. Vandiver,* 373 So.2d 366 (Fla. 2d DCA 1979), and *Horton v. O'Rourke,* 321 So.2d 612 (Fla. 2d DCA 1975). *Cf. Waldron, supra,* 36 B.R. at 642.

■ 8. Debtor's actions in regard to the contract with Complete and his ultimate breach of such lacked the good faith required to bring the measure of damages for breach of contract under the protection of the rule announced in *Flureau v. Thornhill, supra.* Accordingly, Complete is entitled to full compensatory damages, including those for loss of bargain which is measured as the difference between the value of the property on the date of breach and the contract price. *Wolofsky, supra,* at 615.

9. Complete has been damaged to the extent of $440,000 ($2,740,000 fair market value less $2,300,000 contract price) and is entitled to have its Claim No. 15 allowed in that amount.

For all the foregoing reasons, a separate order overruling debtor's objection to Claim No. 15 and allowing the claim in the amount of $440,000 will be entered.