BANK OF MONTREAL,
et al., Appellant,

v.

AMERICAN HOMEPATIENT,
INC., et al., Appellee,

In re American Homepatient,
Inc., et al.

No. 3:04–0188.
Bankruptcy No. 302–08915.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 20, 2004.

James Russell Kelley, Neal & Harwell, Nashville, TN, Lenard M. Parkins, W. Alan Wright, Haynes & Boone, LLP, Houston, TX, for appellant.

David E. Lemke, Waller, Lansden, Dortch & Davis, Steven Allen Riley, Bowen, Riley, Warnock & Jacobson, PLC, George N. Panagakis, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, Thomas Harvel Forrester, Gullett, Sanford, Robinson & Martin, Nashville, TN, for Official Committee of Unsecured Creditors, Equity Committee, Invacare Corporation, creditors.

Robert J. Mendes, Mendes & Gonzales, PLLC, Nashville, TN, Frank J. Wright, C. Ashley Ellis, Hance, Scarborough, Wright, Ginsberg & Brusilow, Dallas, TX, for appellee.

Charles Walker, Office of the U.S. Trustee, Nashville, TN, for U.S. Trustee.

### MEMORANDUM

WISEMAN, Senior District Judge.

## I. INTRODUCTION:

Before the Court is an appeal of the Middle District of Tennessee Bankruptcy Court's ruling, which determined the amount of the Bank of Montreal's [1] ("Agent") damages claim resulting from American Home Patient's [2] ("Debtor") rejection of an executory contract during a Chapter 11 Reorganization Plan. In its December 11, 2003 Memorandum Opinion, the Bankruptcy Court determined that the Warrant Agreement between the Debtor and the Warrant Holders/Lenders, who are represented by the Agent, was an executory contract and that the resulting damages stemming from the rejection of the agreement were $846,369.85. (Bankr. Doc. No. 1990, p. 18). Bank of Montreal appealed, arguing that the Bankruptcy Court erred in determining that the Warrant Holders' Damages claim was worth only $846,369.85. Bank of Montreal filed a Brief in support of its position (Doc. No. 4) to which the Debtor filed a Response (Doc. No. 5), which was followed in turn by a Reply by the Bank (Doc. No. 6). After a careful review of the Record and the filings, the Court AFFIRMS the Bankruptcy Court's decision for the reasons set out below.

---

**1.** The party titled Bank of Montreal is the Agent for a group of senior secured lenders who extended credit to American Home Patient, Inc.

**2.** The party titled American HomePatient, Inc. represents a Delaware corporation, its subsidiaries and affiliates.

## II. FACTS:

On July 31, 2002, American HomePatient and twenty four of its subsidiaries filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Under the Reorganization Plan, the Debtor was authorized to assume or reject executory contracts. On July 11, 2003, the Debtor moved to reject an option-like Warrant Agreement in which Warrant Holders could purchase 3,365,315 shares, or 19.99%, of American HomePatient stock. The Warrant Agreement, which was entered into in connection with a Credit Agreement, defined Warrant Holders as "each Lender and thereafter each Person to whom a Lender or other Warrant Holder may transfer any Warrants." (Warrant Agreement, p. 5).

The Agent, on behalf of the Lenders, filed an Objection to Debtor's Motion for Order Authorizing Debtor to Reject Warrant Agreement. In their Objection, the Agent argued, as they do in their current Appeal, that the damages arising from the rejection of an executory contract should be determined by state law, in this case by New York law. The Agent applies New York law to argue that the rejection of the Warrant Agreement occurred when the Warrant Holders learned of the Debtor's intention to reject the Warrant. The Debtor responds that the Bankruptcy Code treats the rejection as occurring the day before the Petition was filed.[3]

On November 20–21, 2003, the Bankruptcy Court held a hearing to consider the Debtor's Motion and the Agent's Objection. In a Memorandum Decision, the Bankruptcy Court granted the Debtor's Motion seeking authorization to reject the Agreement. The Court did not specifically address the Agent's argument for determining damages under New York law, but it implicitly rejected that argument by relying on §§ 365(g)(1) and 502(g) of the Bankruptcy Code to set the rejection date as June 30, 2003, the day immediately prior to the petition filing. Relying on these sections of the Bankruptcy Code and on the relevant case law, the Court found "that damages stemming from the rejection should be determined as if such claim had arisen before the date of filing the petition." (Memorandum Decision, p. 13). As a result, the Court found that the claim should be allowed "in the amount the Lenders would have recovered as of the time the petition was filed." (*Id.*).

The Court then heard testimony from each of the parties' experts as to how rejection damages should be calculated. After evaluating the experts' testimony, the Court found the Debtor's expert to be more persuasive than the Lenders' expert on the issue of the correct value the warrants held on the day before the petition was filed. Accordingly, the Court set the price per warrant at $.02692, subtracted the warrant exercise price of $0.01 per warrant, and then multiplied the difference by the 3.3 million odd warrants held by the Lenders to arrive at $846,369.85 in rejection damages. Following the entry of an Order incorporating the Memorandum Decision's findings, the Agent filed a Motion to Alter or Amend the Order, which the Bankruptcy Court denied as to all material issues raised by the Agent. This appeal followed.

---

**3.** As will become clear, determining the timing of the warrant agreement's rejection is a crucial question that is linked to the issue of valuation of the warrants which is linked to the issue of rejection damages due the Lenders. Because the price of AHP shares rose sharply from the date of the petition filing to the date the Lenders allegedly learned of the Debtor's intention to reject the Warrant, the estimated value of the warrants varies significantly depending on which date is chosen as the date of rejection.

## III. STANDARD OF REVIEW

Under Bankruptcy Rule 8013, this Court will not set aside a Bankruptcy Court's findings of fact unless the Court finds them to be "clearly erroneous." A finding of fact is clearly erroneous when "although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *In re Scott,* 1999 WL 644380 at *3 (6th Cir. Aug. 3, 1999). The bankruptcy judge's conclusions of law are reviewed de novo. *See Bank One, Lexington, N.A. v. Woolum (In re Woolum),* 979 F.2d 71, 75 (6th Cir. 1992); *see also In re Creekstone Apartments Assocs., L.P.,* 1995 WL 588904 at *3 (M.D.Tenn.1995).

## III. DISCUSSION

### A. *The Date of Breach*

Section 365(g)(1) provides as follows:

 ... the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) If such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition.

11 U.S.C. § 365(g)(1). As a complement to § 365(g)(1), § 502(g) states that "a claim arising from the rejection ... of an executory contract ... of the debtor that has not been assumed shall be determined ... the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(g). Sixth Circuit Bankruptcy and District Courts interpreting §§ 365(g)(1) and 502(g) all agree that the appropriate date for determining damages stemming from rejection of an executory contract is the day before the petition

was filed. *In re U.S. Truck Co., Inc.,* 89 B.R. 618, 623 (E.D.Mich.1988) (stating that rejection of an executory contract is treated as a breach that is "held to have occurred immediately prior to the filing of the petition in bankruptcy"); *In re Steiner,* 50 B.R. 181, 184 (Bankr.N.D.Ohio 1985) ("When a debtor rejects an executory contract, it is deemed to constitute a breach of the contract which occurs immediately prior to the filing of the petition ... [and the non-breaching party's] claim arises from the damages which are incurred as a result of a rejection of the lease as of that time."); *Acme Precision Building, Ltd. v. Dayton Forging & Heat Treating, Inc.,* 23 B.R. 79, 84 (Bankr.S.D.Ohio 1982) ("The rejection of the unexpired lease constitutes a breach of the lease contract as of the date immediately preceding the filing of the petition in Chapter 11"); *In re Solon Automated Servs., Inc. v. Georgetown of Kettering, Ltd.,* 22 B.R. 312, 316 (Bankr. S.D.Ohio 1982) ("Postpetition rejection of a lease ... is statutorily construed as constituting a breach giving rise to damages 'immediately before the date of the petition' "). Sixth Circuit courts are by no means alone in finding that §§ 365(g)(1) and 502(g) require the court to use the day prior to the petition filing as the relevant date for determining the value of a damages that arise after a contract has been rejected. *Workman v. Harrison,* 282 F.2d 693, 699 (10th Cir.1960) (stating that claim arising from the rejection of an executory contract "is limited to the value of ... [the] contract at the date the petition in bankruptcy was filed"); *In re O.P.M. Leasing Servs., Inc.,* 79 B.R. 161, 164 (S.D.N.Y.1987) ("[T]he statutory framework provides for the allowance of a claim arising from the rejection of an unexpired lease in that amount which would be recoverable by the non-breaching party as of the time the petition was filed"); *In re*

*O.P.M. Leasing Servs., Inc.,* 56 B.R. 678 (Bankr.S.D.N.Y.1986) ("The Code provides a clear directive that whenever general unsecured claims are incurred, whether pre- or postpetition, they are calculated for damage assessment purposes as occurring as of the date the petition was filed").

Despite this seemingly clear area of the law, the Agent advances two major arguments to support its conclusion that the Bankruptcy Court erred in determining that the last date for purposes of considering damages was June 30, 2002. First, the Agent argues that because the Debtor can pay the Lenders the entire amount of damages they seek without diminishing payments to other creditors, the Lenders are entitled to use the date they learned of the breach as the determinative date for valuing the warrants. The Debtor's ability to pay all its creditors, the Agent argues, does not implicate the economic policy behind treating contract rejection as pre-bankruptcy unsecured claims rather than post-bankruptcy administrative claims. Second, the Agent relies on several authorities that require property interests to be determined under state law, even in the context of a bankruptcy proceeding, to suggest that contract rejection damages in this case must be calculated under N.Y. law, not the Bankruptcy Code. The Debtor responds that federal bankruptcy law preempts any state law regarding property interests, especially in this case where there are bankruptcy provisions that specifically relate to contract rejection damages.

The Agent's suggestion that the Debtor's ability to pay the Lenders' requested damages in full is a non-starter for purposes of determining the issue before this Court. First, the Agent cites no authority to support the proposition that a debtor's ability to pay the entire amount of damages a creditor seeks entitles a creditor to

such payment. Moreover, accepting the Agent's argument that the Lenders should be paid in excess of $6 million in damages because the Debtor has the means to do so would place the Lenders' interests of being compensated for a breach ahead of the Debtor's interests in rehabilitating itself. As one court put it, "the general theme of Section 365 is that the other party to an executory agreement has no protectable interest that offsets the bankruptcy interest of dispensing with burdensome or inconsequential property." *In re White Motor Corp.,* 44 B.R. 563, 568–69 (Bankr. N.D.Ohio 1984).

■ Next, the Agent cites to Sixth Circuit authority to support his argument that even in bankruptcy proceedings, state law should be used to determine contract rejection damages. After reviewing the relevant case law in this circuit and in others, the Court agrees with the Agent that the damages for contract rejection as a general matter are determined under state law. *In re Madeline Marie Nursing Homes,* 694 F.2d 433 (6th Cir.1982) (stating that state law should be the basis for determining the underlying obligations of a claim arising out of breach of contract); *In re Handy Andy Home Improvement Centers, Inc.,* 1998 WL 603252, *4 (Bkrtcy.N.D.Ill. 1998) (stating that landlord's claim for damages resulting from debtor's contract rejection is determined by state law); *In re Besade,* 76 B.R. 845, 847 (Bkrtcy. M.D.Fla.1987) (stating that the measure of contract rejection damages is a question of state law). However, when these courts state that the contract rejection damages are determined under state law, they mean that they will look to state law to fill in what federal bankruptcy law leaves out regarding such issues as whether money damages can be recovered at all, the amount of damages, and how issues of bad

faith affect the amount of damages.[4] *See In re Madeline*, 694 F.2d at 439 n. 7 (stating that the existence and amount of the bankrupt's liabilities, though determined by the bankruptcy court in allowing or disallowing claims, will inevitably be determined by nonbankruptcy, usually state law) (citing Countryman, *The Use of State Law in Bankruptcy Cases* (Part 1), 47 N.Y.U.L.Rev. 407, 412(1972)); *In re Handy Andy*, 1998 WL 603252 at *4 (resorting to Illinois law to determine that damages consist of the rents owed plus costs incurred in obtaining and maintaining a mitigating lease less a credit for rents obtained under a mitigating lease); *Besade*, 76 B.R. at 847 (determining that debtor's actions amounted to bad faith and that under Florida law he was therefore liable for full compensatory damages). Importantly, these cases do not dispute the rule found in §§ 365(g)(1) and § 502(g) that a contract is breached, for purposes of considering claims for rejected contracts, as of the date immediately prior to filing the petition. In summary, these courts seem to accept that bankruptcy law establishes the parameters for allowing contract rejection claims—for example, that they be treated as unsecured pre-petition claims and that breach is deemed to occur immediately prior to the petition date—and that state law fills in the gaps—notably, by providing guidance as to whether there is any merit to the damages claims and how much they are worth. *See In re Madeline*, 694 F.2d at 439 f.7 (stating that although federal law governs the disposition of claims to the debtor's assets, state law clearly governs the creation and definition of those claims) (citing Note, *Bankruptcy and the Limits of Federal Jurisdiction*, 95 Harv. L.Rev. 703, 705 (1982)).

█ The Agent argues that New York law applies and establishes that the relevant date for determining the Lenders' damages is the date the Lenders learned of the Debtor's breach.[5] Essentially, the Agent is asking the Court to look forward to events occurring after the petition was filed rather than backward to the date immediately prior to the petition filing. However, it is not necessary to resort to New York law to determine this issue since the answer is in § 502(g) of the Bankruptcy Code: "a claim arising from the rejection ... of an executory contract ... of the debtor that has not been assumed shall be determined ... the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(g). Moreover, to the extent that New York law does apply, the Court finds that it conflicts with § 502(g) of the Bankruptcy Code and that the state provision must yield to the superceding federal law. *In re Madeline*, 694 F.2d at 436–37 (stating that bankruptcy courts have power to supercede state law where it conflicts with the federal bankruptcy law).

### B. *Expert Opinion on Valuation of the Lenders' Damages Claim*

█ In addition to alleging error with respect to the date used for assessing damages, the Agent also argues that the Bankruptcy Court erred by adopting the testimony of the Debtor's expert on the value of the Lenders' damages claim. The

---

4. Clearly, the Bankruptcy Code did not leave out the important question of when, in the context of a rejected contract in bankruptcy, a breach is deemed to occur. *See* 11 U.S.C. § 502(g).

5. § 2–711 states in pertinent part that:

....the measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided ...

Bankruptcy Court heard testimony from the Debtor's and the Lenders' experts and concluded that while the Lenders' expert was credible and knowledgeable, "his expert report was less helpful to assist the court in the damages calculation" in part because his approach "used ex-ante procedure whereby he considered knowledge and information after July 30, 2002 to achieve an accurate estimate of the value of the warrants as of [the] day prior to the petition." (Memorandum Opinion, p. 16–17). The Court found the "snapshot" analysis provided by the Debtor's expert, in which he used the average price of AHP stock 30 days prior to June 30, 2002 as a baseline, to be "more persuasive, and helpful in the court's analysis." (*Id.*).

■ As the Bankruptcy Court stated, " '[when] weighing conflicting appraisal testimony, courts generally evaluate a number of factors, including: ... the appraiser's ... manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented.' " *In re American HomePatient, Inc.*, 298 B.R. 152, 173 (Bkrtcy.M.D.Tenn.2003) (quoting *In re Smith*, 267 B.R. 568, 572–573 (Bankr. S.D.Ohio 2001)). As for the proper standard of review, valuation is a mixed question of law and fact, the factual premises being subject to review on a clearly erroneous standard, and the legal conclusion being subject to *de novo* review. *In re Clark Pipe & Supply Co., Inc.*, 893 F.2d 693, 697–98 (5th Cir.1990).

The Court finds that it was not reversible error for the Bankruptcy Court to credit the Debtor's expert over the Lenders' expert considering that the Lenders' expert relied on post-petition information in valuing the warrants and the Debtor's expert did not. In the Court's opinion, the decision by the Debtor's expert to use only

pre-petition stock prices in valuing the warrants is consistent with the spirit of § 502(g) because it restricts the rejection claim to the pre-petition universe, as directed by § 502. Furthermore, the use by the Debtor's expert of a valuation method that is common in the industry reduces the likelihood that the court below erred in accepting the valuation.

## IV. CONCLUSION

Having weighed the parties' arguments and consulted the Bankruptcy Code and controlling authorities, the Court finds that the language of Sections 365(g)(1) and 502(g) of the Bankruptcy Code, as well as judicial interpretation of these provisions, support the Bankruptcy Court's decision to determine the rejection damages as of July 30, 2002. Similarly, the Court finds that it was not error for the Bankruptcy Court to adopt the testimony of the Debtor's expert with respect to valuation. Accordingly, the Bankruptcy Court's Order is AFFIRMED.

### *ORDER*

Before the Court is an appeal of the Middle District of Tennessee Bankruptcy Court's ruling, which determined the amount of the Bank of Montreal's ("Agent" or "Appellant") damages claim resulting from American Home Patient's ("Debtor" or "Appellee") rejection of an executory contract during a Chapter 11 Reorganization Plan. In its December 11, 2003 Memorandum Opinion, the Bankruptcy Court determined that the rejection of Warrant Agreement between the Debtor and the Warrant Holders/Lenders, who are represented by the Agent, resulted in contract rejection damages of $846,369.85. (Bankr. Doc. No. 1990, p. 18). Bank of Montreal appealed, arguing that the Bankruptcy Court erred in determining that the Warrant Holders' Damages claim was worth

only $846,369.85. Bank of Montreal filed a Brief in support of its position (Doc. No. 4) to which the Debtor filed a Response (Doc. No. 5), which was followed by a Reply from the Bank (Doc. No. 6).

For the reasons explained in the accompanying Memorandum, this Court AFFIRMS the decision of the Bankruptcy Court.

It is so ORDERED.