SNEED, Circuit Judge:
 

 Defendant-appellant Kal W. Lines, as trustee in bankruptcy for the James E. O’Connell Company, appeals the district court’s judgment in favor of plaintiff-appel-lee Flavor Dry, Inc., in its action for breach of contract and conversion. We affirm.
 

 I.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 In February 1982, the James E. O’Con-nell Company filed for reorganization under Chapter 11 of the Bankruptcy Code. The proceeding was converted to one under Chapter 7 in January 1983, and Kal W. Lines was appointed trustee for the bankruptcy estate. In April 1983, Flavor Dry— formed by former O’Connell Co. officer Daniel O’Connell, attorney William Lukens, and William Clow — offered to purchase from the estate roughly 9V6 acres of land, on which an apple dehydration plant was located, as well as certain personal property used in the dehydration operation. An agreement was reached and Flavor Dry tendered and Lines accepted an earnest money deposit of $42,500. The operative language of the agreement provided:
 

 The balance of said purchase price shall be paid within 30 days of confirmation of sale or within such time as may be required for Trustee to convey clear title to the above-described property.
 

 Excerpt of Record (E.R.) item 15, at 2. The parties stipulated that thirty days from the confirmation of sale was June 13, 1983.
 

 Flavor Dry sought to finance the purchase through Bank of America. The bank informally agreed to make such a loan, provided that Flavor Dry obtained a dehydration machine and settled pending litigation between the O’Connell family and the bank. Flavor Dry engaged in separate negotiations with a firm called Interlease Company in order to obtain financing for a dehydrator.
 

 
 *1260
 
 What happened on June 13, 1983 is subject to dispute. Flavor Dry contends — and the trial court found — that on June 13, 1983, its attorney, Lukens, telephoned Lines to inform him that Flavor Dry was working to finalize its financing arrangements with the Bank. The court also found that Lukens sent a confirming letter of even date, in which he noted that title to-the subject property remained clouded. Lines contends, however, that Lukens telephoned and said that the financing had fallen through and that Flavor Dry was terminating the agreement.
 

 Lines’s attorney sent a letter to Flavor Dry, also dated June 13, 1983, terminating the contract and asserting that Flavor Dry had anticipatorily repudiated its obligations by failing to tender payment as of the close of business on the 13th. The letter further informed Flavor Dry that its breach had resulted in a forfeiture of its earnest money deposit.
 

 Flavor Dry reacted by bringing suit for breach of contract and conversion in California Superior Court. Lines removed the case to the United States Bankruptcy Court. Then, upon Flavor Dry’s motion, the case was withdrawn to the United States District Court for the Northern District of California, where it proceeded to a bench trial.
 

 The district court found that it was Lines ' who had breached his contract to convey to Flavor Dry clear title to certain real and personal property of the bankruptcy estate, and that Lines had subsequently converted Flavor Dry’s earnest money deposit of $42,-500. It also found that Flavor Dry had sustained total damages in the amount of $163,000. The court ordered Lines to refund the deposit, to return $1,500 in rental fees, and to pay $120,500 in compensatory damages ($163,000 less the amount of the deposit). This appeal followed.
 

 II.
 

 DISCUSSION
 

 A.
 
 Breach of Contract and Conversion
 

 Lines continues to assert that Flavor Dry breached the contract. He interprets the contractual language quoted above as making Flavor Dry’s payment of the purchase price a condition precedent to his own duty to perform, and he contends that Flavor Dry’s performance was due no later than June 13, 1983. Relying on this interpretation, Lines asserts he was entitled to terminate the contract when Flavor Dry failed to tender the outstanding balance on that date.
 

 The district court concluded, however, that the parties’ obligations under the agreement were mutual. It observed that in ordinary commercial business transactions involving real estate, “a buyer is not in a position to obtain final approval for its financing ... until the lender knows what the assets will be, that they have clear title, and that they are, indeed available, to be security for the transaction.” E.R. item 5, at 6. Thus, it held, both parties were obligated to proceed in good faith, and Flavor Dry had no duty to tender the balance of the purchase price until Lines was able to deliver clear title to the subject property.
 

 Lines challenges this construction of the contract as well as the following findings and holdings by the district court: (1) that as of June 13, 1983, Flavor Dry was actively working to obtain the necessary financing and that such financing would have been provided in due course; (2) that on June 13, 1983, Lines was unable to deliver free and clear title to the subject properties and had not taken the steps necessary to do so; and (3) that Lines, not Flavor Dry, had anticipatorily breached the contract.
 

 The law of California controls both the construction of the contract and the question of breach. Under state law, “the interpretation of a written contract is a matter of law for the court even though questions of fact are involved.”
 
 Southland Corp. v. Emerald Oil Co.,
 
 789 F.2d 1441, 1443 (9th Cir.1986). Hence we review the district court’s construction of the agreement
 
 de novo. See id.
 
 On the other hand, findings of fact underpinning the determination of breach will not be overturned
 
 *1261
 
 unless they are clearly erroneous.
 
 See Interpetrol Bermuda Ltd. v. Kaiser Aluminum International Corp.,
 
 719 F.2d 992, 998 (9th Cir.1984).
 

 In interpreting a contract we are guided by the standard of reasonableness.
 
 Southland Corp.,
 
 789 F.2d at 1443. In this case the district court’s construction of the contract is the more reasonable one. By framing the terms of performance in the alternative — “within 30 days of confirmation of sale
 
 or
 
 within such time as may be required for Trustee to convey clear title to the above-described property,” E.R. item 15, at 2 (emphasis added) — the parties objectively manifested an intention that the contractual obligations were to be mutual. Moreover, conditions precedent are disfavored.
 
 See Rubin v. Fuchs,
 
 1 Cal.3d 50, 53-54, 81 Cal.Rptr. 373, 376, 459 P.2d 925, 928 (1969) (en banc);
 
 Southland Corp.,
 
 789 F.2d at 1444. We will not construe promises in a bilateral contract to create such conditions “unless [we are] required to do so by plain, unambiguous language.”
 
 Sulmeyer v. United States (In re Bubble Up Delaware, Inc.),
 
 684 F.2d 1259, 1264 (9th Cir.1982). As indicated, that is not the case here.
 

 Nor can we say that the district court’s findings of fact were clearly erroneous. To be sure, there was conflicting testimony on most issues. “But when a trial judge’s finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.”
 
 Anderson v. City of Bessemer City,
 
 470 U.S. 564, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985). All of the district court’s salient findings were supported by credible evidence in the record and we therefore accept them as true.
 

 Lines’s conduct, viewed against these findings and holdings, constituted an anticipatory breach of the contract,
 
 see Taylor v. Johnston,
 
 15 Cal.3d 130, 137, 123 Cal.Rptr. 641, 646, 539 P.2d 425, 430 (1975) (en banc) (defining anticipatory breach to include “a clear, positive, unequivocal refusal to perform”), entitling Flavor Dry to restitution of the deposit as well as damages,
 
 see
 
 Cal.Civ.Code §§ 3300, 3306 (Deering 1984). Under these circumstances, Lines’s subsequent refusal to return Flavor Dry's deposit constituted conversion.
 
 See Hartford Financial Corp. v. Burns,
 
 96 Cal.App.3d 591, 598, 158 Cal.Rptr. 169, 172 (1979) (defining tort of conversion as “ ‘any act of dominion wrongfully exerted over another’s personal property in denial of or inconsistent with his rights therein’ ” (quoting
 
 Igauye v. Howard,
 
 114 Cal.App.2d 122, 126, 249 P.2d 558, 561 (1952))).
 

 B.
 
 Damages
 

 The issue of damages remains. Lines contends that the district court’s award of $163,000 in damages — largely composed of lost profits — was excessive and rested on speculation. We disagree. Damages for breach of contract include lost profits.
 
 See
 
 Cal.Civ.Code §§ 3300, 3306 (Deering 1984);
 
 Steelduct Co. v. Henger-Seltzer Co.,
 
 26 Cal.2d 634, 648-49,160 P.2d 804, 812 (1945) (en banc). Although the amount of such losses is often difficult to prove, it is the breaching party that made proof necessary. It would not be just to require precise and exact proof. Thus, under California law, the plaintiff need only “show the amount of damages with ‘reasonable certainty,’ ”
 
 id.
 
 at 651, 160 P.2d at 813; within these limits, any doubts are resolved against the defendant,
 
 id.,
 
 160 P.2d at 813.
 
 See also Natural Soda Products Co. v. City of Los Angeles,
 
 23 Cal.2d 193, 199-200, 143 P.2d 12, 17 (1943) (en banc) (applying similar rule in determining lost profits resulting from trespass to land),
 
 cert. denied,
 
 321 U.S. 793, 64 S.Ct. 790, 88 L.Ed. 1082 (1944). Our standard of review is correspondingly narrow.
 
 See Woods v. United States, 724
 
 F.2d 1444, 1451 (9th Cir.1984).
 

 Flavor Dry’s expert witness, Dr. G. Stephen Jizmagian, testified that, but for the breach, Flavor Dry’s net, pre-tax cash flow from the O’Connell plant would have been $163,000. Jizmagian based his
 
 *1262
 
 opinion, in part, on the financial statements and operational characteristics of the O’Connell company from the mid-1960’s through the early 1980’s, as well as comparable data pertaining to similar businesses. He also considered more general information such as forecasts and reports on markets for dried vegetable products. These sources of information were clearly proper grounds for an expert opinion.
 
 Cf. Steelduct,
 
 26 Cal.2d at 651, 160 P.2d at 813 (holding it proper to “introduce evidence of past profits received by the promisee under the contract ... or, occasionally, of profits in a similar enterprise”). In light of Jizma-gian’s testimony, the trial court’s determination appears reasonable. We decline to overturn it.
 

 AFFIRMED.