In re Moses N. ASLAN, Debtor.

Moses N. ASLAN; Irving Sulmeyer,
Trustee, Appellants,

v.

**SYCAMORE INVESTMENT
COMPANY, Appellee.**

No. 88–6581.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1990.

Decided July 19, 1990.

Gary E. Klausner and Irving M. Gross, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for appellants.

Mary D. Lane and Lawrence B. Gutcho, Loeb and Loeb, Los Angeles, Cal., for appellee.

Jon E. Drucker, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for amicus curiae.

Before CANBY, KOZINSKI and LEAVY, Circuit Judges.

## OVERVIEW

LEAVY, Circuit Judge:

In 1982, the appellant-debtor, Moses Aslan, entered into a contract to sell a shopping arcade ("the Arcade") to Sycamore Investment Co. ("Sycamore"). Aslan failed to fulfill certain of its contractual obligations. Sycamore initially refused to purchase the Arcade, but subsequently sued to

specifically enforce the contract. In 1986, with Sycamore's suit still pending, Aslan filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The bankruptcy court then granted Aslan's motion to reject the sales contract as an executory contract. Rejection of an executory contract constitutes a breach under 11 U.S.C. § 365(g) (1988),[1] and the bankruptcy court fixed the date of breach for its damages calculations at the date that Aslan failed to fulfill its contractual obligations in 1982. 65 B.R. 826. On appeal by both parties, the district court held that the relevant date of breach was the day immediately prior to the filing of the bankruptcy petition. We affirm the district court.

## FACTS AND PROCEEDINGS

■ Aslan contracted to sell the Arcade to Sycamore in April 1982 for $4.5 million. The contract required Aslan to provide Sycamore with the leases and estoppel certificates for the Arcade's eighteen tenants, documents which Sycamore admittedly needed to calculate and minimize its investment risk.[2] Aslan provided Sycamore with five or six leases, and the record is unclear how many, if any, estoppel certificates. Aslan also never gave Sycamore any assurances that it would provide the documents at any point in the future. Sycamore then approached various tenants and obtained some of the information that would have been conveyed by the leases and estoppel certificates.

The contract called for the purchase of the Arcade to be finalized by August 27, 1982, or 180 days thereafter. Sycamore did not complete the purchase within this time frame. In September 1983, however, Sycamore sought to complete the purchase and sued to specifically enforce the contract. On March 3, 1986, with Sycamore's

suit still pending, Aslan filed for bankruptcy under Chapter 11 of the Bankruptcy Code.

Aslan petitioned the bankruptcy judge to reject the contract for the sale of the Arcade under 11 U.S.C. § 365(g) as an executory contract. Rejection under section 365(g) "constitutes a breach of such contract." Section 365(g). The bankruptcy judge allowed the rejection and calculated Sycamore's damages at half a million dollars. This amount represented the difference between the contract price of $4.5 million, and the Arcade's fair market value of $5 million as of November 1, 1982, the date when, according to the bankruptcy court, Aslan breached the contract. Both parties appealed this determination to the district court.[3]

The district court reversed on the damages issue. The district court held that the relevant date of breach, and therefore the date at which to value the Arcade for purposes of damages, was the day immediately preceding the petition for bankruptcy. Calculated this way, Sycamore's damages amount to the difference between the contract price and the value of the Arcade on the day prior to Aslan's March 3, 1986 bankruptcy petition, effectively granting Sycamore the appreciation of the property up to March 2, 1986. The district court remanded for a redetermination of damages taking into account the new date of breach. This appeal followed.

## STANDARD OF REVIEW

■ State law controls both the construction of the contract and the question of breach. *In re James E. O'Connell Co.*, 799 F.2d 1258, 1260 (9th Cir.1986). Under California law, the court's construction of the contract is reviewed de novo. *Id.* The

---

1. All statutory citations are to the Bankruptcy Code unless otherwise indicated.

2. A certificate of estoppel is a tenant's warranty as to the terms of a lease, and thus would enable Sycamore to estimate the cost of ousting or keeping a tenant. Aside from being a source of information, however, the certificate of estoppel would be of considerable value to Sycamore in the event of litigation with a tenant,

since a tenant cannot contradict the certificate's contents, having once warranted them as true. D. Augustine, S. Zarrow, *California Real Estate Law & Practice* § 90.69[2] (1989).

3. Pending the appeal from the bankruptcy court's decision, the Arcade was sold to a third party for approximately $8 million pursuant to Aslan's reorganization plan.

findings of fact underlying the determination of breach will not be overturned unless they are clearly erroneous. *Id.* at 1260–61.

■ Determinations regarding the executory nature of the contract under section 365(g) and the effects of rejection pursuant to that section are conclusions of law which we review de novo. *See In re Woodson Co.*, 813 F.2d 266, 270 (9th Cir.1987).

## DISCUSSION

### I. Breach of the Contract

■ Aslan argues that it substantially performed its obligations under the contract even though it failed to provide Sycamore with the leases and certificates of estoppel. Aslan's theory is that its performance was of minimal importance because Sycamore obtained the information contained in the leases and estoppel certificates by Sycamore's own efforts.

Aslan's argument is unpersuasive. Under California law, "[w]hat constitutes substantial compliance or performance is a question of fact." *Cline v. Yamaga*, 97 Cal.App.3d 239, 248, 158 Cal.Rptr. 598, 603 (1979). Departure from full performance constitutes a material breach " 'if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract.' " *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App.3d 1032, 1051, 241 Cal.Rptr. 487, 495 (1987) (quoting *Jacobs & Youngs, Inc. v. Kent*, 230 N.Y. 239, 243–44, 129 N.E. 889, 891 (1921)). The undisputed evidence reveals that the leases and certificates were essential to Sycamore, which needed these documents to calculate and minimize its investment risk. The district court did not clearly err in making its factual determination that Aslan materially breached the contract by failing to provide the leases and certificates. Sycamore's diligence in securing information to substitute Aslan's deficient performance in no way reduces the materiality of Aslan's breach.

### II. Effect of Aslan's Breach

■ Aslan argues that if it breached the contract in 1982, then Sycamore's damages are properly calculated under state law using November 1, 1982, as the date of breach. Aslan's argument misapprehends the consequences of its breach.

Aslan's breach presented Sycamore with an option to "treat [its] own obligations under the contract as discharged and claim damages for the breach or to waive the breach and treat the contract as still in effect." *In re Alexander*, 670 F.2d 885, 887 n. 1 (9th Cir.1982) (quoting Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 479, 506–07 (1974)).

It is clear that by choosing to seek specific performance of the contract, Sycamore treated the contract as still in effect. The situation is the same as in *In re Alexander* and that case controls. In *In re Alexander*, the plaintiffs-buyers had entered into a contract to purchase a home from the defendants-sellers. On the closing date, the buyers tendered the necessary payments to close, but the sellers refused to convey the property. The buyers sued for specific performance. We held that the buyer's election to sue for specific performance and forego a suit for damages "treated the contract as still in effect." *Id.* The same result obtains in this case.

Since Sycamore chose to treat the contract as still in effect in spite of Aslan's 1982 breach, that breach is not relevant for purposes of determining damages.

### III. Rejection of the Contract

■ In March 1986, with Sycamore's suit for specific performance still pending, Aslan filed for voluntary bankruptcy under Chapter 11 of the Bankruptcy Code. Aslan then moved the bankruptcy court to reject its sales contract with Sycamore as an executory contract pursuant to 11 U.S.C. § 365(g). That section provides in part:

[t]he rejection of an executory contract ... of the debtor constitutes a breach of such contract[,] ... (1) if such contract ... has not been assumed ... immediately before the date of the filing of the petition.

11 U.S.C. § 365(g)(1). The bankruptcy court allowed the rejection of the contract.

It is clear that the contract was executory under section 365(g). " 'Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides.' " *In re Alexander*, 670 F.2d at 887 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5844). Sycamore's choice to treat the contract as still in effect left both Aslan and Sycamore with unperformed contract obligations, namely Aslan's obligation to provide Sycamore with the documents required by the contract, and Sycamore's obligation to tender the purchase payment as soon as Aslan provided the documents.[4]

The executory contract was also never assumed. Thus, section 365(g)(1) applies and the only remaining issue is whether the relevant breach occurred in 1982, as the bankruptcy court held, or one day prior to the filing of Aslan's bankruptcy petition, as the district court held. We review these conclusions of law de novo. *In re Woodson Co.*, 813 F.2d 266, 270 (9th Cir.1987).

We agree with the district court and hold that when the debtor secures rejection of a non-assumed executory contract under section 365(g)(1), the date of breach is the day immediately prior to the filing of the bankruptcy petition. We believe our conclusion is required by the clear language of section 365(g)(1), which provides that the breach resulting from rejection occurs "immediately before the date of the filing of the petition." Our conclusion is amply supported by the views of the bankruptcy courts. *See, e.g., In re Chi–Feng Huang*, 23 B.R. 798, 803 (Bankr. 9th Cir.1982) (should bankruptcy court allow sellers-debtors to reject sales contract on remand, buyer's damages would presumably include appreciation in value of property to date prior to bankruptcy petition); *In re Besade*, 76

B.R. 845, 848 (Bankr.M.D.Fla.1987) (buyer's damages are fair market value less contract price, taking fair market value as fixed on the day before the bankruptcy filing).

Aslan and the Trustee in Bankruptcy as amicus argue that if Aslan breached the contract, the relevant breach occurred in 1982, notwithstanding the language in section 365(g)(1) that places the breach immediately prior to rejection. They contend that nothing in the language of section 365(g)(1) precludes other pre-petition breaches from being considered the relevant material breaches. They also point to the Senate and House reports leading to the enactment of section 365(g), which state that the section

> defines the time as of which a rejection of an executory contract ... constitutes a breach of the contract.... Generally, the breach is as of the date immediately preceding the date of the petition. The purpose is to treat rejection claims as prepetition claims.

S.Rep. No. 989, 95th Cong., 2d Sess. 60, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5846; H.Rep. No. 595, 95th Cong., 1st Sess. 349, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6305 (same language as Senate Report). Aslan and the Trustee focus on the statement that "[g]enerally, the breach is as of the date immediately preceding the date of the petition," and read into the word "generally" a congressional suggestion that other breaches could be used to calculate damages.

We cannot agree with Aslan and the Trustee. First, nothing in the legislative history of section 365(g)(1) indicates that Congress was considering that breaches other than the one resulting from rejection could be used for calculating damages. The reference to the impact of the word "generally" is entirely speculative. If anything, we read the cited legislative history

---

**4.** The fact that Sycamore chose to treat the contract as still in effect after Aslan's 1982 breach does not mean that the contract expired on the last day for closing under the contract, and therefore ceased to be executory. Aslan's conduct prevented Sycamore from closing the

contract on the agreed date. *See In re Alexander*, 670 F.2d at 887 & n. 1 (where buyer chose to treat the contract as still in effect after seller's breach, buyer's failure to pay by closing date did not convert the executory contract into an executed one).

as reinforcing our conclusion that the breach resulting from rejection is deemed to occur on the day preceding the bankruptcy petition.

Second, the .clear language of 365(g)(1) militates against the conclusion that other pre-petition breaches could be relevant for purposes of damages. To apply, section 365(g)(1) requires that the rejected contract be executory. But the contract can only be executory if no material pre-petition breach has terminated the other party's obligations to perform, either because the breach did not occur or because it was waived. *See In re Alexander,* 670 F.2d 885, 887 & n. 1 (9th Cir.1982). Thus, there exists only one breach that can exist for purposes of section 365(g)(1): that arising from rejection.

## CONCLUSION

The district court correctly held that the applicable date of breach was the day immediately prior to Aslan's bankruptcy petition. The district court's mandate to remand the case to the bankruptcy court for a redetermination of damages taking into account this date of breach should now issue.

AFFIRMED.