587 A.2d 239
**DeLawrence BEARD et al.**
v.
**S/E JOINT VENTURE et al.**
**No. 171, Sept. Term, 1989.**
Court of Appeals of Maryland.
Jan. 25, 1991.
On Motion for Reconsideration.

Elsie L. Reid, Jeff Evan Lowinger, Steven J. Lewicky, Furey, Doolan & Abell, Chevy Chase, Charles V. Kirchman, Wheaton, for petitioners.

James W. Salter, III, Jeffrey C. Taylor, Tomes, Salter, & Taylor, Rockville, John H. Harman, Jeffrey M. Orenstein, Coggins & Harman, Silver Spring, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and HARRY A. COLE, Judge of the Court of Appeals (retired), Specially Assigned.

## ON MOTION FOR RECONSIDERATION

RODOWSKY, Judge.

Respondents have moved that this Court reconsider its opinion filed November 13, 1990. See *Beard v. S/E Joint Venture*, 321 Md. 126, 581 A.2d 1275 (1990). Applying Maryland law we held that, in the event the circuit court on remand determined that the Beards would have been awarded specific performance but for the bankruptcy rejection of the executory contract, the circuit court, for the purpose of computing an award of damages in lieu of specific performance, should value the property as of the date specific performance became unavailable. We said that date was June 17, 1988, when the order of rejection was entered.

By their motion Respondents, for the first time in this Court, argue that such an application of Maryland law would be preempted by § 365(g)(1) of the Bankruptcy Code, 11 U.S.C. § 365(g)(1) (1988). Respondents assert that § 365(g)(1) requires damages in lieu of specific performance to be computed by valuing the realty as of the day preceding the filing of the petition in bankruptcy. The Beards deny that § 365(g)(1) has that effect. They maintain that § 365(g)(1) simply prevents claims arising out of the rejec-

tion of executory contracts from becoming administration expenses, and that the section requires purchasers' claims, once determined and to the extent unsecured, to be treated ratably with general, unsecured pre-bankruptcy creditors.

The background of this issue is as follows. Bankruptcy Judge Mannes in the United States Bankruptcy Court for the District of Maryland on December 10, 1987, lifted the automatic stay under the Bankruptcy Code "to permit [this action] to proceed to trial" in the Circuit Court for Montgomery County. By an order entered on June 17, 1988, Bankruptcy Judge Derby approved S/E Joint Venture's motion to reject its contract with the Beards. Bankruptcy Judge Derby further ordered that the Beards "shall, and are authorized to, file any claim they, or either of them, may seek to assert for damages resulting from such rejection on or before thirty (30) days after the entry of this Order." Presumably the claim was filed.

In connection with the motion for reconsideration pending before this Court, we were for the first time furnished a copy of an opinion and order by Judge Derby, entered February 6, 1989. That opinion reflects that, after the circuit court had entered judgment in the amount of $124,-594 for the Beards, representing restitutionary and reliance interest damages, S/E Joint Venture had sought in the bankruptcy court a summary judgment limiting the Beards' claim to that amount. On the rationale set forth below, Judge Derby denied summary judgment.

"[T]he Beards contend that because Debtor's rejection of their contract deprived them of their option under State law to seek specific performance and forced them to seek damages exclusively, they are entitled to receive under 11 U.S.C. § 365(g)(1) the monetary equivalent of their specific performance remedy, namely, the loss of the economic benefit of their bargain. Inherent in this argument as presented by the claimants, on the undisputed facts of this case, is the legal contention that 11 U.S.C. § 365(g)(1) gives rise to a measure of damages independent of State law. This Court disagrees.

"Section 365(g)(1) provides that '... the rejection of an executory contract ... of the debtor constitutes a breach of such contract ... immediately before the date of the filing of the petition....' The significance under the Bankruptcy Code of treating the breach as occurring immediately prepetition is that the damages arising from the breach are unsecured prepetition claims, rather than post-petition, priority administrative claims. Since the damages are determined as if there was a breach of the contract immediately prepetition, they are measured under State law for breach of contract. *E.g., In re Waldron,* 36 B.R. 633 (Bkrtcy.S.D.Fla.1984), particularly at 641–42. *Cf., In re Northrup–Johnson, Inc.,* 15 B.R. 767 (Bkrtcy.D.Md.1981). Section 365(g)(1) does not provide a measure of damages, nor does it prescribe what elements of potential damage are compensable as the result of a breach. These are questions governed by State contract law."

*In re S/E Joint Venture, Debtor,* Ch. 11 Case No. 87–4–2841SD, Memorandum of Decision at 3–4 (Bankr.D.Md. Feb. 6, 1989).

Judge Derby then considered an argument by the debtor that there was no contract in existence to be breached post-petition because of the circuit court's finding of a breach on March 16, 1987. The argument was rejected. The bankruptcy court pointed out that the Beards were seeking specific performance in the state court, but that that remedy "was no longer available because Debtor successfully had exercised its legal option to reject the contract. ... The Beards may have alternative bases for computing their damage claim under State law, namely, breach by rejection or prior breach, but they will not receive a double recovery." *Id.* at 4–5. In concluding the memorandum decision, Judge Derby said:

"Therefore, it appears that if Debtor was able to perform the contract with the Beards, but refused to perform the contract by rejecting it in this bankruptcy case, the Beards allowed claim determined under Maryland law

may include loss of bargain damages as of the date of the breach, namely, immediately before the petition. 11 U.S.C. Section 365(g)(1)."

*Id.* at 8. The circuit court, however, had "made no determination on the rejection damage issue." *Id.* at 9.

Section 365, a companion provision of the Bankruptcy Code, § 502(g), and the legislative history of both sections support the Beards' analysis. Section 365(a) authorizes a trustee in bankruptcy, with court approval, to "assume or reject any executory contract or unexpired lease of the debtor." Section 365(g) provides in relevant part as follows:

"[T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition[.]"

Senate Report No. 989, 95th Cong., 2d Sess. 60, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5846, stated:

"Subsection (g) defines the time as of which a rejection of an executory contract or unexpired lease constitutes a breach of the contract or lease. Generally, the breach is as of the date immediately preceding the date of the petition. The purpose is to treat rejection claims as prepetition claims."

Section 502 of the Code deals with the allowance of claims. Subsection (g) of § 502 reads:

"A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e)

of this section, the same as if such claim had arisen before the date of the filing of the petition."

Senate Report No. 95–989 advises that

"[s]ubsection (g) gives entities injured by the rejection of an executory contract ... a prepetition claim for any resulting damages, and requires that the injured entity be treated as a prepetition creditor with respect to that claim." .

Senate Report No. 989, 95th Cong., 2d Sess. 65, *reprinted in* 1978 U.S.Code Cong. & Admin.News, at 5851.

The commentators are in general accord with the statements of the Senate Report. *See* 2 *Collier on Bankruptcy* § 365.08, at 365–52 and –53 (L.King 15th ed. 1990) ("Where the contract or lease has not been previously assumed, rejection constitutes a breach immediately before the date of the filing of the petition. The purpose of this is to make clear that, under the doctrine of relation back, the other party to a contract which has not been assumed is simply a general unsecured creditor." (Footnotes omitted)); 3 *Collier on Bankruptcy* § 502.07 (L. King 15th ed.1990); 1 W. Drake, Jr., *Bankruptcy Practice for the General Practitioner* § 9.05 (2d ed.1990). Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection,"* 59 U.Colo.L. Rev. 845 (1988) (Andrew), succinctly states:

"The assume-or-reject election created by the courts and carried forward into the Bankruptcy Code has a clear and fairly modest purpose: to insure that creditors *of the debtor* who are parties to pending contracts and leases do not become administrative creditors *of the estate* merely by virtue of the estate's succession to the debtor's property. The doctrine achieves that goal in simple (though indirect) fashion, by deeming that contract and lease assets do not pass into the estate absent an affirmative decision to accept them; the cost of acceptance is an assumption of the liabilities they entail. 'Rejection,' at least in the context of the basic assume-or-reject election, is nothing more than the label for the election not to assume a contract or lease."

*Id.* at 866. With respect to the rejection-as-breach rule, Andrew concludes:

"When an executory contract or lease is not assumed by the *estate*, the 'breach' rule simply coordinates the treatment of the non-debtor party with that of all other creditors by creating a presumption, conclusive for claims allowance purposes, that the *debtor* will not perform. The 'breach' rule thus is not in any sense designed to diminish the non-debtor's rights vis-a-vis *the estate*, but rather to buttress them. Relief to the *debtor* is correspondingly enhanced, because the debtor's obligation on the contract will be within the scope of discharge."

*Id.* at 877–78.[1]

In their memoranda supporting and opposing the motion for reconsideration that is before us, the parties have not cited any decision that analyzes the interrelationship between § 365(g)(1) of the Code and a rule of state law which awards damages in lieu of specific performance by valuing realty as of the time specific performance becomes unavailable. There are, however, decisions involving facts analogous to those presented here. Guidance from those cases points in different directions.

Supporting the Beards' position is *In re Waldron*, 36 B.R. 633 (Bankr.S.D.Fla.1984), *rev'd on other grounds*, 785 F.2d 936 (11th Cir.1986), *cert. denied*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986). *Waldron*, 36 B.R. at 641–42, was cited by Judge Derby for the proposition that the amount of a creditor's claim for rejection damages is determined in accordance with state law. In *Waldron* the debtors on January 15, 1964, gave the creditor an option to purchase land, exercisable during the period January 1, 1984, through December 31, 1994. The bankruptcy court permitted the debtors to reject the option contract and

---

1. Beyond the scope of the issue before us is Andrew's thought provoking thesis that "avoiding-power rejection is based upon a supposed policy that does not exist, a policy against 'executoriness.'" 59 U.Colo.L.Rev. at 915.

turned to the measure of damages under Florida law. The court held that the optionee-creditor was

> "entitled to the 'benefit of the bargain;' that is, the difference between the estimated market value of the property at the time the option becomes exercisable on January 1, 1984, less the option agreement price, plus an additional speculative premium, if any, reflecting anticipated appreciation of the value of the property at the time the option will lapse on December 31, 1994, as well as any additional loss suffered by [the optionee] as the natural and proximate result of the breach."

36 B.R. at 642.

If Respondents' contention to us were correct, § 365(g)(1) should have compelled the *Waldron* option to be valued by valuing the property subject to the option as of the day immediately preceding the petition. That petition date in *Waldron* was *prior* to the date the option became exercisable. Further contrary to Respondents' construction of § 365(g)(1) is that the *Waldron* court permitted consideration of the anticipated appreciation of the property at the end of the decade over which the option was exercisable.

The issue in *In re Good Hope Chem. Corp.*, 747 F.2d 806 (1st Cir.1984), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985), was the date to be used for converting the creditor's claim from German marks into American dollars. The debtor, a Texas corporation, had agreed to buy equipment from the German seller, with payment to be made in marks. The debtor rejected the contract in bankruptcy. The equipment was eventually resold, and the creditor claimed the United States dollar equivalent of over eleven million German marks which represented the difference between the contract price and the resale price. The debtor's petition had been filed October 31, 1975, the contract was rejected May 9, 1980, and the creditor's claim was allowed on June 12, 1980. The district court concluded that § 63(c) of the Bankruptcy Act controlled. It provided that "the rejection of an executory contract ... shall constitute a breach of such contract ... as of the date of the filing of

the petition initiating a proceeding under this title." 11 U.S.C. § 103(c) (1976). The First Circuit vacated and remanded for determination of the exchange rate as of the date of rejection of the contract.

The court applied the policy concerning exchange rates on breach of contract damages enunciated in *Hicks v. Guinness*, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168 (1925). Reasoning that the "breach was complete, and the compensable loss incurred, only when the contract was rejected on May 9, 1980, not before," the First Circuit held that "the relation back rule would disrupt the *Hicks* Court's attempt to give the plaintiff his expectancy as of the date his loss became definite." 747 F.2d at 812 (footnote omitted).

Another vendor-debtor, rejection-as-breach, case which supports the Beards' construction is *In re Chi–Feng Huang*, 23 B.R. 798 (Bankr. 9th Cir.1982). The contract had been formed in June 1979, and the purchaser-creditor had a specific performance action pending when the various debtors filed Chapter 11 proceedings in 1980 and 1981. The trial court had refused to approve rejection, but the Ninth Circuit reversed because an erroneous legal standard had been applied to that determination. Turning to damages, the appellate court said that rejection

"would permit the estate to reap the benefits of the appreciation in value that has occurred in the three years since the contract was signed. Under 11 U.S.C. § 365(g) the rejection of the executory contract would be treated as a breach of the contract and would entitle [the purchaser] to present a claim against the estate for damages, presumably including the appreciation in value of the property. In effect the appreciation would be divided equally among all unsecured creditors including the vendee whose contract is rejected. The result is similar to the recovery of a preferential transfer or the voiding of a lien on property of the estate."

*Id.* at 803. In this case the "three years since the contract was signed" extended beyond the filing dates of the petitions.

In other words, after rejection, the appreciated property is sold by the estate and the proceeds are included in the distribution to all creditors. Included among those creditors is the purchaser, whose claim "includ[es] the appreciation in value of the property." *Id.* Determining the purchaser-creditor's claim by valuing the property later than the day immediately preceding petition filing permits the creditor to have the claim determined in the amount representing the substantive relief to which the creditor is entitled under state law. Valuing property for damage computation purposes at a date later than the day before petition filing does not mean that all of the appreciation is paid to the purchaser-creditor. Where the property has appreciated after the petition was filed and that value is used in determining the claim, the effect is to increase the dividend paid to the purchaser-creditor, ratably with other creditors, but that result simply reflects the extent of the purchaser-creditor's substantive rights under state law.

Respondents cite *In re RLR Celestial Homes, Inc.,* 108 B.R. 36 (Bankr.S.D.N.Y.1989), involving a vendor-debtor who sought bankruptcy protection after the purchaser had brought a specific performance action. The trustee did not assume the contract. The Bankruptcy Court held on the principal issue in the case that the contract was executory and could be rejected. With respect to damages the court held that the purchaser had a lien against the realty for advances paid toward the purchase price. In addition, the purchasers also had

"a prepetition unsecured claim for damages which will include the loss of their bargain, the cost of refinancing their present house in order to fund the purchase price, the attorneys fees incurred in the unsuccessful effort to obtain title to the property in question and all other consequential costs and interest incurred as a result of the debtor's rejection of the executory contract in question."

*Id.* at 46. The court did not specifically speak to the date of valuation in computing "the loss of their bargain." *Id.*

The court in *In re Kent*, 91 B.R. 1 (Bankr.E.D.N.Y.1988), would not permit a contract to be assumed under which the contract purchaser was to pay $230,000. The bankruptcy estate sold the property for $367,000 at public auction. Thereafter the contract purchaser bought the property from the successful bidder. The contract purchaser then claimed against the estate for the difference between the price at which the property was sold at auction and the contract price, plus certain consequential damages. The claim was allowed. The court held:

> "[The contract purchaser's] right to damages ... is based on the fact that the statute says that his contract was automatically breached when it was not assumed. The damages to which [the contract purchaser] is entitled are precisely those he could claim if his contract had been breached the day before the petition was filed which was when [the vendor] lost the ability to carry it out without the approval of the bankruptcy court. This is the difference between the contract price and the fair market value of the property. Since no effort has been made to show that the fair market value as of the date the petition was filed was any different from the fair market value of the property at the time of the auction, the damages are the difference between the contract price and the auction price."

*Id.* at 3. *In re Kent* supports the Respondents' position. After stating that the contract was "automatically breached when it was not assumed," *id.*, the court seemingly treats § 365 as requiring valuation for benefit of the bargain damages by relating back to a fictitious breach on the day preceding the filing of the bankruptcy petition.

The issue in *In re Besade*, 76 B.R. 845 (Bankr.M.D.Fla. 1987), was whether the English rule of *Flureau v. Thornhill*, 2 W. Black. 1078, 96 Eng.Rep. 635 (K.B.1776), limited the creditor's claim to one for restitution. After contracting to sell realty to the creditor at a price advantageous to the creditor, the vendor contracted to sell the same property as part of a larger tract and then petitioned under Chapter

11. The first purchaser's contract was not assumed, producing a claim for benefit of the bargain damages. The debtor argued that court approval of the rejection of the first contract triggered the *Flureau v. Thornhill* rule. That argument failed. Without further discussion the court allowed the claim as presented which sought the value of the property on the day prior to the petition, less the contract price.

Respondents place heavy emphasis on *In re Aslan*, 909 F.2d 367 (9th Cir.1990). There the bankruptcy judge had valued the property for damage purposes using the date of a breach that had occurred some three and one-half years prior to the petition for bankruptcy. The district court reversed, holding that the value on the day prior to the petition controlled. The Ninth Circuit affirmed, stating:

> "[W]hen the debtor secures rejection of a non-assumed executory contract under section 365(g)(1), the date of breach is the day immediately prior to the filing of the bankruptcy petition. We believe our conclusion is required by the clear language of section 365(g)(1), which provides that the breach resulting from rejection occurs 'immediately before the date of the filing of the petition.' Our conclusion is amply supported by the views of the bankruptcy courts."

*Id.* at 371. The court cited two cases, *In re Chi–Feng Huang*, 23 B.R. 798, and *In re Besade*, 76 B.R. 845, both of which we have discussed, *supra*.[2]

The cases that permit the flexibility of the state law rule are more persuasive. In particular we are not persuaded by the *Aslan* approach. Applied to the facts of this case *Aslan* would mean that, should the circuit court conclude that the Beards would not have been awarded specific performance, the date of the breach for computing benefit

---

**2.** *In re Aslan*, 909 F.2d at 371, parenthetically describes *Chi–Feng Huang* as holding that "buyer's damages would presumably include appreciation in value of property to date prior to bankruptcy petition."

of the bargain damages would not be March 16, 1987, the date of the breach found by the trial court. Rather, apparently by operation of federal law, the valuation would be deferred to October 18, 1987, the date prior to S/E Joint Venture's petition in Chapter 11. We find nothing in the statute, the legislative history, or the cases relied upon by Respondents which explains why federal bankruptcy policy would require enhancement of a purchaser-creditor's claim by post breach appreciation in the property where state law would deny that enhancement.

Nor is there any difference in effect on the state law damage calculation between the fictitious relation forward of the date of breach, discussed above, and the fictitious relation back which Respondents urge as a matter of federal preemption. If § 365(g)(1) of the Bankruptcy Code mandates that the day prior to the filing of the petition be used for the valuation that, in turn, is used in calculating damages under state law to determine the bankruptcy claim, then the Bankruptcy Court for the District of Maryland erred in permitting the Circuit Court for Montgomery County to determine the claim under state law. At a minimum, that bankruptcy court should have directed an appraisal as of the immutable, legally controlling date, in the event the sellers were liable. Further, if Respondents are correct, Judge Derby would have erred in rejecting the Beards' contention, in opposition to the S/E Joint Venture motion for summary judgment, that rejection damages should be determined under federal law.

We also note that, when Congress has intended to limit the amount of damages under state law which will be allowed as a claim against a debtor's estate, Congress has done so directly. *See, e.g.,* the cap provided by § 502(b)(6) on the amount of claims otherwise recognized by state law, for breach by termination of a lease, including termination by rejection under § 365 of an executory lease. *See* § 502(g). And see *In re Waldron,* 36 B.R. at 641–42.

We recognize, however, that our holdings on federal law are not controlling on federal courts that will or may

⟩

consider aspects of this matter in the future. Therefore, assuming evidence is presented to support the finding, we suggest that the circuit court, on remand, make an additional finding, determining the value of the property as of the day prior to the petition, whether the circuit court does, or does not, conclude that the Beards would have been entitled to specific performance.

MOTION FOR RECONSIDERATION DENIED.