In re KINGS GATE APARTMENTS, LTD., Debtor.

Bankruptcy No. 96–15126–BH.

United States Bankruptcy Court, W.D. Oklahoma.

Dec. 16, 1996.

Doneen Douglas Jones, Fellers, Snider, Blankenship, Bailey and Tippens, Oklahoma City, OK, for Debtor/Movant.

Tom Major, Assistant United States Attorney, Oklahoma City, OK, for Respondent, USA/HUD.

RICHARD L. BOHANON, Bankruptcy Judge.

## MEMORANDUM OF DECISION AND ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION AND DETERMINING HUD'S CLAIM

The debtor seeks to confirm its plan of reorganization and the United States, through the Department of Housing and Urban Development ("HUD") objects on the grounds the plan is not proposed in good faith and is not feasible.

The plan is to sell the debtor's sole asset, a 120 unit apartment project, to a buyer who will raze it and construct a supermarket. The sale proceeds would pay all creditors in full and return a substantial sum to the debtor.

The confirmation dispute involves a "Use Agreement" between the parties which restricts use of the property to housing for low and middle income families until the year 2014. This court has previously held the agreement is an executory contract which may be rejected by the debtor under 11 U.S.C. § 365. The issue then becomes—what is HUD's claim for breach of the contract under section 502(g)? The debtor contends the Use Agreement is invalid because it goes beyond the authority conferred upon HUD by Congress, and a governmental unit may not enter into a contract which reaches beyond its specified authority. HUD argues the agreement is valid and provides equitable remedies which cannot be discharged in the debtor's plan.

Financing for the project was provided by HUD under section 236 of the National Housing Act, 12 U.S.C. § 1715z–1.[1] Supplemental financing for capital improvements was later provided under section 201 of the Act, 12 U.S.C. § 1715z–1a, which states that "[n]o assistance may be made available under this section unless the Secretary has determined that (1) [the assistance is necessary] and ... the owner has agreed to maintain the low and moderate income character of such project for a period *at least equal to the remaining term of the project mortgage."* (Emphasis supplied). The stated term of the project mortgage expires in the year 2013. The Use Agreement was entered into by the parties in consideration of the supplemental loan and the debtor agreed to operate the project in accordance with the National Housing Act until May 1, 2014.

The debtor and HUD have different perceptions of section 201 where it refers to *"the remaining term of the project mortgage."* The debtor maintains this means its obligation to use the property for low and moderate income housing ceases upon payment of the note and satisfaction of the mortgage. HUD asserts it means the obligation to maintain the project's character must remain in force at least until the date the last installment would be due according to the stated term of the note and mortgage.

 A reading of the plain language of section 201 leads the court to conclude that HUD's interpretation is correct. The statute certainly could have been drafted with more precision, but does not say the restriction ends upon payment. Rather, it is the debtor's obligation to maintain the character of the project *at least* until the date the note comes due in accordance with its terms, regardless of whether it is paid sooner. This interpretation also complies with the overall intent of the National Housing Act to provide affordable housing. *See United States v. Winthrop Towers,* 628 F.2d 1028 (7th Cir. 1980).

The Use Agreement, therefore, does not exceed HUD's statutory authority and is valid.

## I. HUD'S CLAIM

 Once the Use Agreement is rejected by the debtor HUD then has a claim for its breach under section 502(g). It contends the claim is one for equitable performance since it is not a right to payment and, therefore, cannot be discharged.

The term "claim" is defined in section 101(5) and the question is whether the debt-

---

1. HUD's note is in default and prior to the filing of the bankruptcy petition it had made demand for payment and brought its complaint for foreclosure of the mortgage.

or's breach of the Use Agreement gives rise to a right to payment or an equitable remedy which can be reduced to a right to payment. Under the definition, if HUD does not have a "right to payment" it then does not have a "claim" which can be discharged in the plan. Its equitable remedies, such as injunctive relief or specific performance, are consequently unimpaired upon confirmation. *See* 2 *Collier on Bankruptcy*, ¶ 101.05 at (15th Ed.1996).

HUD introduced some proof of damages but in reality, from all the facts in the record, it is impossible to find that its right to equitable remedies amounts to a right to payment. This is so because it cannot be determined what damages may accrue in the future in the way of costs to construct, rehabilitate, repair and maintain the housing project, provide alternative housing, relocate tenants, pay rent subsidies, administrative costs, or other unknown or unforeseeable expenses. Any sum found at this time would be, at best, an estimate based upon conjecture.

Accordingly, HUD's right to enforce its equitable remedies may not be impaired or discharged. *See In re Aslan,* 65 B.R. 826, 830–831 (Bankr.C.D.Calif.1986), *rev'd in part on other grounds,* 909 F.2d 367 (9th Cir.1993) (a claim which cannot be converted to money damages is not a "claim" and thus cannot be discharged upon rejection of the contract); *In re Thomas,* 133 B.R. 92, 95 (Bankr. N.D.Ohio 1991) (creditor's equitable, nonmonetary rights as result of breach, including injunctive relief, are not disturbed).

## II. CONFIRMATION OF THE PLAN

### A. HUD'S BAD FAITH ARGUMENT

■ HUD argues the plan is not proposed in good faith as required by section 1129(a)(2) but has failed to prove any wrongdoing that would give rise to that finding. The fact that issues are in dispute, standing alone, is not sufficient to establish a lack of good faith. The evidence simply does not support any finding of bad faith on the part of the debtor for, among other reasons, it has a plausible argument for construction of the contracts and interpretation of the statutes.

### B. FEASIBILITY OF THE PLAN

■ HUD then contends the plan is not feasible under section 1129(a)(11) because of the nondischargeable nature of its claim. From the evidence, however, I can only conclude that the plan *as proposed* is feasible as there is no proof it is "likely" to be followed by a need for further reorganization. This is because HUD has equitable remedies which are incapable of being determined at this time and on this record. It is presently impossible to know how or if it will assert its claims, what defenses the debtor may raise, or who will prevail.

A court can only consider the facts as of the date of the hearing. On that date the debtor had a contract for the sale of its property which would provide funds to pay all creditors in full and return a surplus. One cannot say that, on this record, this plan is not feasible. Granted, at some future time HUD may upset the plan but that issue is not before this court at this time.

Accordingly, the plan is confirmed but HUD's equitable remedies for debtor's breach of performance of the Use Agreement are neither impaired nor discharged.